Richard J. Daley, Mayor, Local Liquor Control Commissioner, Plaintiff-Appellant, v. License Appeal Commission, A. L. Cronin, Chairman, et al., and James Dassouras, Licensee, Defendants-Appellees.

Gen. No. 49,770.

First District, First Division.

December 7, 1964.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

McDonnell & McDonnell, of Chicago (Bernard J. McDonnell, Sr., of counsel), for appellee, James Dassouras.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

The Mayor, as Local Liquor Control Commissioner of the City of Chicago, appeals from a circuit court judgment confirming the License Appeal Commission's reversal of the Mayor's order of license revocation.

The Mayor instituted proceedings to revoke the liquor license of James Dassouras on eight charges of violating the statutes of the State of Illinois and the ordinances of the City of Chicago, each charge relating to a separate instance and date. After a hearing of all the charges, the Mayor made no finding regarding seven, but as to the eighth charge did find:

> That on April 10, 1963 John Christenson, bartender on the licensed premises, permitted a female on said premises . . . to solicit a police officer on said premises to engage in acts of prostitution in violation of the statutes of the State of Illinois and the ordinances of the City of Chicago.

On the basis of the finding the Mayor issued an order revoking the local liquor license. In reversing the order of revocation the License Appeal Commission found that the order was not supported by substantial evidence in the light of the whole record.

A police officer of the City of Chicago testified that on April 10, 1963 he entered the licensee's premises in civilian garb at about 1:15 a. m. He took a seat at the bar. There were 15 to 20 patrons in the tavern and they were being served by two bartenders. After the officer was served a drink by the bartender, John Christenson, a female approached and stood at the bar at his left side. Christenson was at all times within 3 or 4 feet of the officer. After the female stood there and spoke to him for about one and a half minutes, the officer ordered drinks for both of them which were served by Christenson. He said that as the bartender was standing right in front of them the female conversed in ordinary conversational tones. He invited her to have another drink and, being served, she sat down next to him. While Christenson was standing 3 feet away from them, the

girl proposed a little party and the officer assented. Christenson "was just standing there, watching the bar and serving customers who indicated they wanted drinks. I did not recall if there was any music at that particular time. I was concentrating on my conversation with" the female. She quoted him a price of $10 and $3 for a room saying she would "give him a lay." He accepted and she told him that she would meet him on the corner. As she left the tavern the officer called Christenson over and said "Listen, buddy, this girl wants to give me a lay. Is she clean?" Christenson answered "Yes, she is okay. Stop back in." The officer then left to meet the girl. After placing the girl under arrest, he and fellow officers returned and placed a charge of keeping a house of prostitution against both bartenders. They also arrested three girls for loitering as prostitutes. In court, leave to file these charges was denied.

On cross-examination the officer said he did not know whether Christenson was paying any attention to any part of the conversation he had with the girl but "I would say that he did hear part of it. I do not know the part he heard." He did not say to the bartender that she solicited him for prostitution. An offer of a "lay" without the mention of money, would not be prostitution. He did not tell Christenson that the girl wanted to go to a room with him. He did not tell the bartender that she was talking improperly to him.

Christenson testified that he saw the officer and the girl in the tavern that night. The juke box was playing "quite loud" and he was busy. He was standing in the middle of the bar but with the loud noise he could not hear anything. When the girl got up to leave the officer said "You meet a lot of nice people here" and he answered "you sure do." The officer asked "Is she okay." He was busy and it

was noisy and when the officer said that, he said "Sure she is, why not?" He then went about waiting on customers. He was getting busy then. He denied that the officer told him that she wanted to give him a "lay."

The Criminal Code of 1961 (Ill Rev Stats 1963, c 38, §§ 11–14, 15) provides:

11–14 Prostitution. (a) Any person who performs, offers or agrees to perform any of the following acts for money commits an act of prostitution:

(1) Any act of sexual intercourse; or
(2) Any act of deviate sexual conduct.

11–15 Soliciting for a Prostitute.

(a) Any person who performs any of the following acts commits soliciting for a prostitute:

(1) solicits another for the purpose of prostitution; or
(2) arranges or offers to arrange a meeting of persons for the purpose of prostitution; or
(3) directs another to a place knowing such direction is for the purpose of prostitution.

The Illinois Liquor Control Act (Ill Rev Stats 1963, c 43, § 153) provides that where the local commissioner determines, after a hearing, that the license shall be revoked, he shall state the reasons for such determination. It further provides that an appeal may be had from such revocation before the License Appeal Commission who shall rule upon the record before the local commissioner without any new or additional evidence in support of or in opposition to the revocation order appealed from. The Liquor Appeal Commission is limited to the questions:

(a) whether the local liquor control commissioner has proceeded in the manner provided by law;

(b) whether the order is supported by the findings;

(c) whether the findings are supported by the substantial evidence in the light of the whole record.

The local commissioner argues that the Liquor Control Act vests in him an extensive legal discretion in the revocation of liquor licenses, and as an officer who conducts the hearings thereon, he has the prerogative of judging the credibility of the witnesses who testify before him. Taylor v. Civil Service Commission of Chicago, 33 Ill App2d 48, 52, 178 NE2d 200 (1961).

■ He insists that we consider the entire record of proceedings including the testimony in connection with the other seven charges upon which he made no findings with which to support his determination. In effect what the local commissioner proposes is that the License Appeal Commission, the circuit court and this tribunal consider more than he saw fit to act upon. The Act makes it mandatory upon him to state his reasons for the determination to revoke the license. The License Appeal Commission passes upon whether these reasons or findings are supported by substantial evidence in the light of the whole record. Having confined himself to the occurrences of April 10, 1963 his findings must be based upon substantial evidence in the light of that day's activities.

The local commissioner has the prerogative of judging the credibility of the witnesses who testify before him, and where he indicates no opinion or expresses no findings it becomes evident that he found no substantive or credible evidence to support the other charges. We have held that a finding of guilty

as to one or more of several charges without a finding as to all is a finding of not guilty as to those not passed upon. Henderson v. Lisowski, 46 Ill App2d 81, 196 NE2d 518 (1964). We, therefore, cannot consider the record regarding the other seven charges to determine whether there was substantial evidence to support his order.

After considering the evidence and proof concerning the April 10, 1963 occurrence, which the local commissioner indicates was the sole basis for his determination to revoke, we must agree with the License Appeal Commission and the circuit court that it is not supported by substantial evidence. The record is devoid of any proof that the bartender, Christenson, heard the solicitation of prostitution by the girl. He was serving many customers, the juke box was playing loudly, and the officer admitted that he did not know if Christenson was paying any attention to the conversation between him and the girl, which was in "conversational tones." He would say that he heard part of it but did not know what part. He never told the bartender that she propositioned him or that she wanted to go to a room with him. He spoke to the bartender regarding the girl only after she got up to leave the tavern. It would require guess, conjecture and surmise to hold that the licensee, through his bartender Christenson, "permitted" the female to solicit the officer to engage in acts of prostitution. The proof in this record fails, as a matter of law, to substantially support the finding of the local commissioner.

The judgment of the circuit court and the order of the License Appeal Commission are affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.