Martha Evans, Licensee of the Premises Located at 1538 North Halsted Street, Chicago, Illinois (Under License Appeal No. 67LA–3), Plaintiff-Appellee, v. License Appeal Commission of the City of Chicago, Defendant-Appellant.

Gen. No. 52,525.

First District, First Division.

April 22, 1968.

Raymond F. Simon, Corporation Counsel, of Chicago (Marvin E. Aspen and Joseph N. Lascaro, Assistant Corporation Counsel, of counsel), for appellant.

Samuel L. Bullas, Bernard Hammer, Henry A. Kalcheim, and Irwin Rosen, of Chicago (Bernard Hammer, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal by the defendant, License Appeal Commission of the City of Chicago, from a judgment entered by the Circuit Court reversing an order of the defendant that had sustained an order of revocation, pertaining to the local liquor license of the plaintiff, Martha Evans, licensee of the premises located at 1538 North Halsted Street, Chicago, Illinois, entered by the Local Liquor Control Commissioner. No questions are raised on the pleadings.

Two Chicago police officers, John Ryle and James Reilly, dressed in working clothes, entered the plaintiff's tavern located at 1538 North Halsted Street, at 2:45 a. m. on October 7, 1966. The tavern is approximately thirty by sixty feet, and has a forty-five foot half-oval bar with approximately twenty-two bar stools. When Ryle and Reilly entered the premises there were six male patrons and one female patron at the bar. Anthony Gullo and John Carbonna, the bartenders, were behind the bar. The two officers seated themselves on adjacent bar stools and ordered drinks, which were poured by Gullo. The aforementioned female patron, one Theresa Wright, then smiled at Ryle and waved at him. When Reilly went to the rear of the tavern to play the jukebox Wright came over and seated herself next to Ryle. Wright then asked Ryle if he was interested in "having a little fun." When he asked her what she meant Wright replied, "If you want to come with me I'll lay you for ten dollars." At this point Reilly returned to his original seat and Ryle ordered drinks for himself, Reilly and Wright, which were poured by Carbonna. Ryle then told Wright that he and Reilly would accompany her to 1641 North Burling for the purpose of having sexual intercourse with her.

Ryle testified that during his conversation with Wright, bartender Carbonna was standing about three feet away with his elbow on the bar and his head on his

hand. Ryle further testified that after he made arrangements with the girl, Reilly then said to Carbonna, "My buddy and I are going with this girl to get laid and we want to take some whiskey with us." Carbonna sold Reilly a half-pint of VO. Ryle stated he then told Carbonna that he and his friend were going to go with Wright and that she was going to charge them Ten Dollars apiece. He asked Carbonna what kind of a girl she was and he replied, "Oh hell, you don't have to worry about her, she is a fine girl." Ryle testified that he then asked Carbonna if he could change a twenty-dollar bill so that he could pay Wright what she was asking for, and Carbonna gave him two tens. Ryle testified that he carried on this conversation with Wright in a loud voice.

Officer Reilly testified that the jukebox was located about fifteen feet from where Wright and Ryle were seated and that it played for about ten minutes at average loudness. He then commenced to talk to Wright; a conversation that lasted about fifteen minutes. Reilly related that during the course of their conversation Wright told him that she would have sexual intercourse with him and Ryle for a Ten-Dollar charge each. Reilly further testified that after he had purchased the VO from Carbonna he asked him, "Are you sure that we won't get into a fight with their girl friends over on Burling Street?" Carbonna responded, "This girl is clean, so are her friends; go ahead and have a good time." Thereafter, while Carbonna was standing directly in front of Reilly, the latter leaned over Ryle and said to Wright, "Let's get straight on the price; how much is it going to cost us to get f——ed." Wright replied, "I told you ten dollars each, and for God's sake, don't talk too loud." Reilly stated that he then turned to Carbonna and said "Well, the price is right, and as long as you say she is okay, I will go along." Reilly then asked Carbonna to pour three more drinks, and Carbonna complied with the request.

Shortly thereafter, Wright having left the tavern, Officers Ryle and Reilly proceeded to the address given to them by Wright. They were met there by Wright, and each of them gave her Ten Dollars. The three of them went into a bedroom where Wright disrobed, and the officers placed her under arrest. The two officers then returned to plaintiff's premises and placed Gullo and Carbonna under arrest. Gullo and Carbonna were both charged with being keepers of a house of prostitution, and both charges were later discharged.

Tony Gullo testified that he did not hear any of the conversation between the officers and Wright, and that he didn't know that Wright was soliciting in the tavern. Gullo further testified that he didn't know Wright and that he had seen her once or twice before.

John Carbonna testified that he was putting stock away during the conversation between Ryle and Wright and that he did not hear what was said. He further testified that one of the officers (he didn't remember which one) asked if the girl was "clean," and that he responded by saying, "I think she is, she looks clean to me." The officers then told him they were going with Wright "to get lucky," and Carbonna wished them luck. Carbonna stated that he didn't know Wright; he had seen her in the tavern once or twice before with her boyfriend.

At the conclusion of the hearing the Commissioner entered an order revoking the plaintiff's local retail liquor license. The order contained the following finding:

> That on October 7, 1966, John Carbonna and Anthony Gullo, bartenders on the licensed premises, permitted a female patron thereon, one Theresa Wright, to solicit police officers on said premises, to engage in acts of prostitution, in violation of the ordinances of the City of Chicago, and the statutes of the State of Illinois.

Plaintiff appealed the Commissioner's order of revocation to the License Appeal Commission, defendant herein, and after a hearing, the Commission found that the findings of the Commissioner were supported by substantial evidence in light of the whole record, and that the order of revocation was supported by the Commissioner's findings. The Commission, therefore, entered an order sustaining the order of revocation entered by the Commissioner. Subsequently the plaintiff filed an application for a rehearing with the Commission which was denied.

The plaintiff then filed, in the Circuit Court, an administrative review action, pursuant to the provisions of the Administrative Review Act (Ill Rev Stats 1963, c 110, pars 264–279). The Court entered a judgment reversing the order of the License Appeal Commission. The judgment contained a finding that the determination of the Local Liquor Control Commissioner and the order of the License Appeal Commission affirming said determination were unsupported by sufficient evidence to sustain the determination.

The defendant contends, on appeal, that,

> The record conclusively establishes that the finding made by the Commissioner was supported by substantial evidence and, therefore the order of revocation cannot be considered as being against the manifest weight of the evidence.

■ ■ The Liquor Control Act provides that the Local Liquor Commissioner has the power to revoke for cause all local licenses issued to parties for premises located within his jurisdiction. (Ill Rev Stats 1963, c 43, par 112, § 3.) Upon review of the decision of the Commissioner the License Appeal Commission determines, inter alia, whether the findings made by the Commissioner are supported by substantial evidence in the light of the whole record. (Ill Rev Stats 1963, c 43, par 153, § 8.) In pro-

ceedings before the Circuit Court brought to review the decision of the License Appeal Commission, the court's consideration is limited by the Administrative Review Act to matters of record; and, furthermore, the Act provides that the findings and conclusions of an administrative agency on questions of fact are deemed prima facie true and correct until the contrary is shown. (Ill Rev Stats 1963, c 110, par 274, § 11.) However, the findings of an administrative agency must be based on substantial evidence, and if they are against the manifest weight of the evidence, may be set aside. Bruce v. Department of Registration and Education, 26 Ill2d 612, 187 NE2d 711. Therefore, the basic question presented on appeal is whether the Circuit Court correctly determined that the aforementioned findings of the Commissioner were not supported by substantial evidence.

Upon examination of the record we have concluded that our decision in Daley v. License Appeal Commission, 54 Ill App2d 265, 204 NE2d 36, is dispositive of the issues raised on the instant appeal. The factual situation presented for review in that decision is substantially similar to the one presented in the case at bar. In Daley the Local Liquor Control Commissioner appealed from a Circuit Court judgment confirming the License Appeal Commission's reversal of the license revocation. The evidence in Daley revealed that a Chicago police officer entered the licensee's premises in civilian clothes. After the officer had been served a drink by the bartender, John Christenson, a female approached and stood next to the officer. Christenson was at all times within three or four feet of the officer. The female said she would give the officer a "lay" for Ten Dollars. While the girl was leaving the tavern the officer called Christenson over and said: "Listen, buddy, this girl wants to give me a lay. Is she clean?" Christenson answered: "Yes, she is okay: Stop back in." The officer testified that while he believed the bartender had heard part of the conversation he was not

sure what part of the conversation he had heard. Upon the foregoing evidence the Commissioner revoked the license of the tavern in question.

We held, in Daley, that the determination of the Commissioner was not supported by substantial evidence, because there was not sufficient evidence introduced to show that the bartender heard the solicitation by the girl, and thereby "permitted" her to solicit for prostitution on the licensed premises. We stated, "It would require guess, conjecture and surmise to hold that the licensee, through his bartender, Christenson, 'permitted' the female to solicit the officer to engage in acts of prostitution." 54 Ill App2d at page 270, 204 NE2d 36.

■ As in Daley, we believe that the evidence in the instant case does not support the Commissioner's finding that Carbonna and Gullo "permitted" a female patron to solicit for prostitution. The evidence, taken in the light most favorable to the Commissioner, does not establish that either of the two bartenders overheard the conversations between Wright and the two officers. Therefore, their knowledge of the solicitation, an essential element of their "permitting" it to take place, has not been proved by substantial evidence.

Nor do the various verbal exchanges between the two officers and Carbonna during the course of which Carbonna made statements such as "this girl is clean," "have a good time" and "she is a fine girl," tend to establish the fact that the latter permitted the officers to be solicited. The officers, in their conversations with Carbonna, presented the bartender with a "fait accompli." Clearly, these conversations were predicated upon the fact that the act of solicitation had already taken place. The statements by Carbonna were only expressions of opinion by the bartender as to the advisability of the officers having intercourse with Wright: they did not show that Carbonna was cognizant of the act of solicita-

128

tion while it was taking place, and thereby permitted it to occur.

■ Likewise, the facts that Carbonna, knowing of the act of solicitation, gave one of the officers change for a twenty-dollar bill, allowed the officers to purchase a half-pint of VO, do not establish the fact that he permitted the act of solicitation to take place. As in the case of the conversation previously referred to in Daley the acts performed by Carbonna took place after the act of solicitation had been completed. The salient feature of the acts complained of is that they did not tend to support the Commissioner's finding that the bartenders "permitted" an act of solicitation for prostitution to take place.

■■ The question as to whether the act of solicitation which took place on the licensed premises is of itself determinative of the cause before us was decided adversely in Daley v. License Appeal Commission, 54 Ill App 2d 265, 204 NE2d 36. There is no doubt that proof of private solicitation between patrons for lewd purposes is not sufficient by itself to justify the revocation of a liquor license. A licensee cannot be charged with conduct over which he has no control. Childers v. Illinois Liquor Control Commission, 67 Ill App2d 107, 213 NE2d 595.

■ The defendant cites the case of Daley v. Johnson, 89 Ill App2d 100, 233 NE2d 95, in support of its contention that a finding that a bartender has permitted solicitation for prostitution is sufficient to support an order of revocation. Of course, if substantial evidence establishes the fact that a bartender has permitted solicitation on the licensed premises the Commissioner has authority to revoke the license in question, and the Johnson case supports this proposition. However, the finding in Johnson that the bartender had permitted a female to solicit for prostitution, was clearly supported by the evidence introduced before the Commissioner. In that case, unlike

129

the instant case, the bartender actively steered the police officer to a prostitute, thus presenting a situation wherein he had obviously permitted a prostitute to solicit on the licensed premises. In the case at bar, it is patently clear that neither Gullo nor Carbonna actively participated in procuring customers for Wright. Therefore, the factual situations between Johnson and the case at bar are substantially dissimilar, and the Johnson decision is not applicable to the instant case.

For the reason that the findings of fact of the Commissioner are not supported by substantial evidence the judgment of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO and MURPHY, JJ., concur.