JOHN W. FITZGERALD, Local Liquor Control Commissioner, Plaintiff-Appellant, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.,* Defendants-Appellees.

First District (1st Division)   No. 79-987

Opinion filed April 7, 1980.

Vincent Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

John W. Fitzgerald (plaintiff), the mayor and local liquor commissioner of the city of Burbank, appeals from a judgment affirming the Illinois Liquor Control Commission's (defendant) reversal of plaintiff's order of license revocation. Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*

Plaintiff instituted proceedings to revoke the liquor license of Hank's Pub, Inc. (licensee), on charges licensee had violated certain ordinance provisions of the city of Burbank. Plaintiff alleged that on September 13, 1978, licensee: (1) suffered or permitted sale of a prohibited controlled substance, Phencyclidene, on its premises; (2) failed to report the sale to the police; and (3) failed to report possession of the Phencyclidene to the police.

A hearing was held by plaintiff on September 26, 1978. Investigator Fred Graca of the Cook County Sheriff's Police testified he entered the licensee's tavern on April 13, 1978, at 7:30 p.m. He was dressed in plain clothes and did not identify himself as a police officer. Graca sat down at the bar and ordered a beer from the bartender, Henry Jungers. A short time later, Graca was approached by a man named Tom Winchell who sat at the bar two chairs away. Graca and Winchell had a conversation concerning the purchase of Phencyclidene (PCP). Graca told Winchell he "was ready to cop [purchase drugs]" and asked Winchell "if he had anything on him." Winchell replied he had a gram. Graca asked, "How much?" Winchell said he wanted $75. The two men continued discussing the price. During this conversation, Jungers was standing on the other side of the bar at a distance of "maybe two or three feet, the width of the bar."

Following the conversation, Graca paid Winchell $75 and Winchell handed him a tinfoil packet of 1 by 1 3/4 inches. This exchange was made in open view on top of the bar. The exchange took 10 to 15 seconds. Graca observed Jungers looking at him at all times during the exchange. After completion of the purchase, Graca left the premises. The substance inside the packet given to Graca was Phencyclidene.

Graca further testified there were 10 to 15 people in the tavern and Jungers was the only bartender. The lighting was not bright and the jukebox was going on and off. There was a "fair" amount of noise as there would normally be in a bar with that many people. At that time, Graca was "not really" paying attention to Jungers. The entire transaction between Graca and Winchell took 10 to 15 minutes. During that time, Jungers was tending bar and waiting on other patrons. In the course of the conversation, there was an argument as to whether the drug was really PCP and some haggling about the price. Although Graca stated Jungers could have heard the entire conversation, he had no idea if Jungers actually heard him. Also, while Graca did observe Jungers looking at him during the transaction, Graca did not know what Jungers did or did not see.

Graca admitted a lay person observing the transaction would not know a violation of the law was being committed, and only a person buying narcotics would know the tinfoil which was passed contained a narcotic. However, Graca stated he believed Jungers and everyone else in the bar knew he was buying narcotics from Winchell because several other drug dealers Graca had purchased drugs from were present in the tavern. But Graca did not know for a fact that Jungers was aware Winchell was selling narcotics to Graca.

Jungers, who is president of the licensee corporation, testified he had no recollection of the particular date in question and did not recall Graca coming into the tavern around that date. In fact, he did not know Graca at that time. Jungers further testified he had no personal knowledge of the events Graca testified to although he was tending bar on the night in question. He did see Graca and Winchell in the bar at other times but as far as he knew, they had just been drinking in the tavern.

Plaintiff issued a final order in this case in which he made the following findings:

"8. That the said Fred Graca purchased from the said Tom Winchell for the sum of $75.00 a packet of a controlled substance known as Phencylidine [sic] (PCP); that said purchase and the conversation leading to the purchase was loud enough and in open view and in the presence of the said Henry K. Jungers.

9. That the said Henry K. Jungers' knowledge of the person by the name of Tom Winchell, the presence of Mr. Jungers at the time

of the purchase, the testimony of Graca that everyone in the tavern knew what was occurring, the experience of Mr. Jungers in the tavern business, the passing of the silver packet for $75.00 in his presence and view, the Commissioner can only reasonably infer that the sale and transaction was made in his view and with his knowledge.

10. That the said Henry K. Jungers did not take any action to prevent or stop the sale of Phencylidine [sic] (a crime) from Tom Winchell to Fred Graca, a police officer who participated in the sale.

11. That Henry K. Jungers did not report to any police department or officer the sale of the controlled substance which occurred in his presence on the licensed premises, nor did he report the possession of the controlled substance."

On the basis of these findings, plaintiff found the licensee guilty of all three charges and ordered licensee's liquor license revoked. The licensee appealed to the defendant agency. By law, the scope of review by defendant was limited to the record of proceedings before plaintiff. (Ill. Rev. Stat. 1977, ch. 43, par. 153.) Defendant heard legal arguments of all parties and entered an order reversing plaintiff's order of revocation. Defendant concluded plaintiff's order was not supported by the findings and the findings were not supported by substantial evidence in light of the entire record. On administrative review, the trial court found defendant's order of reversal was not against the manifest weight of the evidence and not contrary to law and affirmed the order.

In this court, plaintiff contends first, the trial court used the wrong standard in its review because it improperly reviewed defendant's findings and decision rather than plaintiff's findings and decision; and second, plaintiff's findings and decision are not against the manifest weight of the evidence and should therefore be affirmed. Defendant contends the trial court used the proper legal standard and its order of reversal was not contrary to the manifest weight of the evidence but was supported by substantial evidence and was properly affirmed by the trial court.

Plaintiff's first contention is based upon a statement by the trial judge shortly prior to the entry of the order appealed from. The trial court stated he disagreed with the decision of the defendant and he "would not have found the same way." However, the trial court added he could not say the decision of the defendant Commission was contrary to the manifest weight of the evidence or contrary to law, and therefore he would affirm the decision.

■■ ■ We find no problem resulting from these comments. We should and will disregard comments of this type. "The controlling question

before a reviewing court is the correctness of the trial court's conclusion, not the validity of its rationale." (*People v. Tobe* (1971), 49 Ill. 2d 538, 547, 276 N.E.2d 294. See also *Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 968, 301 N.E.2d 167, and authorities there cited.) In fact, the able trial judge followed exactly the basic teaching of the Supreme Court of Illinois in administrative matters. In *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471-72, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229, the supreme court held:

> "The Administrative Review Act provides that agency findings on questions of fact are *'prima facie* true and correct.' [Citation.] We have construed this provision to limit the function of the reviewing court to ascertaining whether the findings and decision of the administrative agency are against the manifest weight of the evidence. [Citations.] The courts will not reweigh the evidence, but are limited to a determination whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. [Citation.] Neither the appellate court nor the trial court may substitute its judgment for that of the administrative agency. [Citations.]"

In this regard, plaintiff seeks to create an inconsistency between *Kessell v. Illinois Liquor Control Com.* (1978), 56 Ill. App. 3d 485, 371 N.E.2d 1210, and *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814. We find no inconsistency between these cases. Both of them comply with the *Davern* standard of administrative review as above stated.

The only administrative record before us is the proceeding before the plaintiff when he discharged his function as the local liquor commissioner. Plaintiff's action is, as a matter of law, subject to review by the defendant Illinois Liquor Control Commission, by the circuit court and by this court. However, the *Davern* guidelines govern judicial review by the circuit court and this court.

■■ Plaintiff's second contention raises the issue of whether the result plaintiff reached is against the manifest weight of the evidence. Proof of the drug sale between the two patrons is not sufficient in and of itself to justify the revocation of a liquor license since "[a] licensee cannot be charged with conduct over which he has no control." (*Evans v. License Appeal Com.* (1968), 95 Ill. App. 2d 121, 129, 237 N.E.2d 817; see also *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 466, 371 N.E.2d 1116.) "The mental state contemplated by the terms 'suffer or permit' * * * evinces the legislative intent to require proof of either authorization, knowledge, or at least a recklessness in failing to know." *Hansmar, Inc. v. Illinois Liquor Control Com.* (1979), 78 Ill. App. 3d 690, 694, 397 N.E.2d 241, and cases cited therein.

The record in this case is devoid of any proof that bartender Jungers authorized, knew or even was reckless in failing to know of the alleged narcotics sale. Jungers admitted he was tending bar on the night in question but he denied having personal knowledge of the sale. Graca's testimony did not contradict this. Graca testified he did not know whether Jungers heard consummation of any transaction. He only stated Jungers "could have heard" the conversation. Also, Graca necessarily did not know what Jungers actually saw. Graca was not paying attention to Jungers, who was serving other customers. The lighting in the tavern was not bright, the jukebox was playing and there was a "fair" amount of noise.

Furthermore, even if Jungers did actually observe the transaction, it is not certain he would be aware there was a narcotics sale occurring. The Phencyclidene was inside a small piece of tinfoil and not visible. Graca stated only a person experienced in these matters would know the tinfoil contained a narcotic. To hold the licensee, through its bartender, did suffer or permit the sale of Phencyclidene in its premises "would require guess, conjecture and surmise * * *." (*Daley v. License Appeal Com.* (1964), 54 Ill. App. 2d 265, 270, 204 N.E.2d 36.) In our opinion, the proof in this record fails to support plaintiff's finding that "the sale and transaction was made in [Junger's] view and with his knowledge."

The decision in *Daley v. Jack's Tivoli Liquor Lounge, Inc.* dealt with a factual situation completely different from the one presented by the record before us. In *Daley*, a series of conversations and arrangements went on between the patron who was about to perform an act of prostitution and the bartender himself. These facts are set out in detail in the *Daley* opinion, 118 Ill. App. 2d 264, 275-76.

Thus, defendant's decision that plaintiff's findings were not supported by substantial evidence in light of the entire record was properly affirmed by the trial court.

The judgment of the circuit court and the order of defendant are affirmed.

Judgment and order affirmed.

McGLOON and CAMPBELL, JJ., concur.