(No. 35255.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES FINN, Plaintiff in Error.

*Opinion filed November 18, 1959.*

HEINEMAN, MARKS, SIMONS & HOUGHTELING, of Chicago, (F. RAYMON MARKS, JR., and MARSHALL PATNER, of counsel,) for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and

Francis X. Riley, and John T. Gallagher, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Defendant, James Finn, was indicted in the criminal court of Cook County for the crime of burglary and, by subsequent counts of the same indictment, was also charged with being an habitual criminal. Upon a verdict of guilty by a jury, together with a finding that defendant had previously been convicted of burglary, the court sentenced him to imprisonment in the penitentiary for life. The cause is here on writ of error.

Prior to trial on the indictment, counsel for defendant petitioned for a pretrial hearing on the issue of defendant's sanity, alleging that defendant could not co-operate with counsel and that he could not understand the charges against him. The petition was granted, a jury was empaneled, and the hearing culminated with a verdict that defendant was sane. It is now urged that the prosecution failed to prove defendant's sanity beyond a reasonable doubt, and that defendant was denied a fair and impartial hearing due to improper conduct of the State's Attorney, the incompetence of his appointed counsel, and the admission of prejudicial evidence. From a careful examination of the entire record, we find merit only in the latter contention, viz., that the admission of improper evidence served to deny defendant the fair and impartial hearing to which he was entitled.

To refute defense testimony designed to show that defendant could neither co-operate with his counsel nor understand the charges against him, Estelle Steinbach, a court reporter, was called as a witness for the prosecution and read her shorthand notes taken upon the occasion of defendant's appearance before another judge, approximately six weeks before, for the assignment of the case for trial. While the notes read in evidence were, for the most part,

competent to establish that defendant clearly and intelligently understood the nature of the charges against him, and that he could co-operate with counsel if he chose to do so, they were at the same time replete with expressions of the assignment judge which register indignation and disbelief of defendant's claim of insanity. Reflecting the assignment judge's attitude and conduct are the following excerpts:

Judge: "Do you want to plead guilty?"

Defendant: "I want a continuance and pass on the period of time I have been in the county jail. There have been certain times I have not been here. I request—."

Judge: "You don't think you can get away with that. I know you were in front of me."

Defendant: "Your Honor—."

Judge: "You are going to get a trial; you are going down to the penitentiary for the rest of your natural life on an habitual."

\* \* \*

Defendant: "\* \* \* I would like to have a doctor determine whether I am sane or insane."

Judge: "You are not insane. You are not going to get away with it."

Defendant: "Well, I would like to have certain witnesses subpoenaed, I won't plead either guilty or not guilty."

Judge: "Standing mute, a plea of not guilty is entered for you. Call for a jury, and I'm telling you when the jury brings in a verdict—."

Defendant: "This Public Defender represents me. I would like a counsel. I would like counsel to enter a plea of continuance for me."

Public Defender: "I will plead a continuance for you."

Judge: "You tried to make him believe you were crazy."

Defendant: "I think I am. I have no recollection of ever having seen this man."

Judge: "You saw him here this morning. No, you are going ahead on this."

Concluding portions of the reporter's notes reveal that the assignment judge thereafter granted a request of the Public Defender for time to interview defendant and that when the cause was again called that day, it was transferred to a trial judge upon suggestion of the State's Attorney.

Although no objection was made by defense counsel to the remarks as the reporter read them, and although the record does not show any objection to them either during or after the trial, under the circumstances it is our opinion that the record was infected with error upon the occasion of the sanity hearing and the defendant is, therefore, entitled to a new hearing and trial. However strong the evidence against an accused may be, and in this case the defendant was caught in the house he was burglarizing with some of the stolen property in his pockets, a fair trial, in all its stages, is a fundamental requirement in a criminal prosecution and when such requirement is not met, it amounts to a denial of due process of law. *Lisenba* v. *California,* 314 U.S. 219, 86 L. ed. 166; *Powell* v. *Alabama,* 287 U.S. 45, 77 L. ed. 158.

It is axiomatic that ultimate decisions of fact must fairly be left to the jury, and to this end it is universally held that judges should refrain from conveying to jurors their personal opinions concerning any disputed question of fact. (See: *Marzen* v. *People,* 173 Ill. 43, 57-59.) And, while, in this case, it was not the judge conducting the sanity hearing who expressed his opinions to the jury, simple logic, justice and consistency require that a jury should not be swayed by judicial opinion either directly or indirectly. Here, the remarks of the assignment judge, which were no doubt accentuated in the eyes of the jurors because they were the words of a judge, related directly to the ultimate issue of fact which was then before the jury,

that is, whether or not defendant was sane. Those remarks, which conveyed to the jury a judicial belief that the claim of insanity was a sham and that defendant was an evil man who merited only an immediate trial and life imprisonment, could only have had the inevitable effect of prejudicing defendant in the eyes of the jury. (Cf. *People* v. *Thomas,* 15 Ill.2d 344; *People* v. *Coli,* 2 Ill.2d 186; *People* v. *Marino,* 414 Ill. 445.) Under any conception of fundamental fairness, the prejudice created by the failure to delete the assignment judge's comments and opinions from the reporter's notes operated to deny defendant the fair and impartial hearing to which he was entitled.

For the reason stated the judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*