EASY LIFE CLUB, INC., Plaintiff-Appellee, *v.* LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

(No. 56955;

First District (4th Division)—March 27, 1974.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Harvey N. Levin, Assistant Corporation Counsel, of counsel), for appellants.

Joseph B. Lederleitner, of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The plaintiff-appellee's retail liquor license was revoked by the local liquor control commissioner upon a finding that the licensee by and through his agents permitted male patrons on the licensed premises to engage in deviate sexual acts; that the licensee's agents, Dwight Menard and David Towell, engaged in deviate sexual acts on the licensed premises; and that the licensee by and through his agents dispensed alcoholic beverages to a person under the age of 21, all contrary to the ordinances of the City of Chicago, the statutes of the State of Illinois and the rules of the Illinois Liquor Control Commission. An appeal was taken by the plaintiff to the License Appeal Commission and it upheld the violation. The plaintiff filed a complaint for administrative review and the trial court on March 19, 1971, reversed the order of revocation.

The defendants-appellants have appealed and present two issues for review. They maintain that the findings and orders of the administrative agencies are supported by the manifest weight of the evidence. The defendants also contend that the order of the local liquor control commissioner was not a void order for failure to render it within 5 days because the statute requiring this is merely directory. In light of our view of this case it is only necessary to discuss the first issue raised.

Detective Eugene Sullivan was the first witness who testified and stated that he entered the licensed premises at approximately 1:50 A.M. on August 20, 1968. Sullivan testified that there were 70 patrons in the lounge when he entered and that they were all male. He ordered a drink and stepped back to a rear wall on the north side of the bar to observe what was occurring in the lounge. Sullivan testified that he observed two different pairs of men standing against the south wall fondling each other in the area of the penis, thighs and buttocks. There was a triangular shaped bar located between the north wall against which Sullivan was leaning and the south wall where the men Sullivan observed were standing. On cross-examination it was established that there were people seated on bar stools on the north side of the bar and people

standing behind them. There were also patrons seated at the south side of the bar with other persons standing behind them. After approximately 10 or 15 minutes Sullivan changed his position to the south side of the bar and observed two other men seated at the bar engaging in the same type of conduct. During cross-examination Sullivan did state that for the most part these men had their backs to him and that there were a number of people standing between him and where the men were seated.

There were two bartenders working on the evening in question, Dwight Menard and David Towell. Sullivan stated he observed Menard come up behind Towell and whisper into his ear. Towell's hands were leaning on the bar and his head was turned. Sullivan testified that Menard had his hands on Towell's shoulders and that the conversation lasted approximately 15 to 30 seconds. He was asked on direct examination, "Did you see any parts of their bodies touch any time while they were talking to each other?", and he replied, "The area of the penis against the buttocks." On cross-examination Sullivan did state that there was a flow of patrons moving in and out across his line of vision at the time he observed Menard and Towell. He also testified that the bar was approximately 8 inches above the waistline of the bartenders.

Detective Sullivan testified that at 2:15 A.M. other policemen entered the premises and told the patrons they were going to be arrested. Sullivan stated that one Ivan Huffmaster was charged with accepting drinks while a minor. According to Sullivan, Huffmaster produced as identification a student card which had his birth date on it. Sullivan stated he observed Huffmaster drinking in the lounge and that the glass from which Huffmaster was drinking was confiscated. The contents of the glass were sent to the crime laboratory for analysis and a copy of the crime laboratory report was introduced into evidence. However, this report was not made part of the record. Upon cross-examination, Sullivan stated that prior to the time Huffmaster was in the process of leaving the lounge he had not taken special notice of him. Sullivan also admitted he did not see Huffmaster place anything he was drinking on the bar when the raid was announced. Sullivan testified that there were approximately 70 glasses on the bar and that he did not see Huffmaster drinking from the particular glass that he picked up. He also stated that the liquid in the glass taken to the crime laboratory was amber in color.

The next witness called on behalf of the city was Nick Dallesandro, the president of the licensee. He stated he was not on the premises when the patrons were arrested but was called down later. When he arrived, Dallesandro was arrested and charged with being the keeper of a disorderly house. The charge was later nonsuited. Dallesandro also testified on his own behalf and authenticated photographs of the licensed premises and

stated it was kept dimly lit. He testified that on the evening in question he left the premises at approximately 11:30 or 12 P.M. and that at that time there were about 15 or 20 women in the lounge. Dallesandro also stated that prior to the date of his arrest and subsequent thereto persons of both sexes frequented the lounge.

Michael Casabianca testified on behalf of the licensee and stated that he was employed by Nick Dallesandro. Casabianca's job was to check the identification of the patrons and to see if anyone had enough or too much to drink. He stated that between 11:30 and 12:00 P.M. on the evening in question the patrons were about 40 percent female. While performing his job Casabianca stands just inside the door of the lounge. He stated that from that position he could not see all the people in the establishment. Casabianca testified that from the north side of the bar he could see the patrons on the south side from the middle of the chest upward.

Dwight Menard, the bartender, testified that on the evening in question he commenced work at 8 P.M. He stated that at about midnight there were between 90 and 100 people in the lounge and that 30 or 40 of them were female. Menard testified that the bar reached the lower portion of his chest and that he could see a patron seated at the bar only from the elbows upward. As to patrons standing behind those seated at the bar, he could only see them from the chest upward. Menard stated that he observed no unusual behavior on the part of any of the patrons and that he did not see any patrons engaging in the type of conduct described by Detective Sullivan. Menard denied any intentional touching contact of his body with that of the other bartender. He testified that the area behind the bar was small and that when the lounge is crowded the bartenders have to move quickly and that occasionally they bump into each other. He also stated that sometimes the bartenders have to whisper to each other about customers who have had too much to drink.

David Towell, the other bartender on duty, also testified on behalf of the licensee. He stated he had heard all of the testimony given in the case and if asked the same questions which were asked of Menard and Casabianca, his answers would be substantially the same. It should also be noted that five photographs were introduced and received into evidence on behalf of the licensee which showed the relation between the height of the bar and the people behind it. Although the photographs were received into evidence they were not made a part of the record certified to the License Appeal Commission. In addition although service of process was attempted on Ivan Huffmaster it was not successful and he did not testify.

■■ This case comes before the Court under the provisions of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) and the rules limiting the scope of review under the Act are well established and no citation of authority is necessary. The findings of the administrative agency are *prima facie* true and correct and a reviewing court is limited to ascertaining whether the findings are supported by the evidence. The findings can only be disturbed where they are against the manifest weight of the evidence and where an opposite conclusion is clearly evident. After carefully reviewing the record in this case, we are of the opinion that there is a lack of substantial evidence to support the findings of the local liquor control commissioner.

■■ The first charge against the licensee was that by and through his agents male patrons were permitted to engage in deviate sexual acts. However, the conduct described by Detective Sullivan does not come within the definition of deviate sexual conduct contained in the Illinois Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 11—2.) In addition and more importantly, there was no evidence that the licensee or its agents had knowledge of such conduct or permitted it.

> "It is fundamental that the authority to revoke a license for cause is limited to conduct or actions of the licensee or conduct or actions of others for which he is deemed responsible or chargeable.
>
> Conversely a licensee cannot be charged with conduct over which he has no control." (*Childers v. Illinois Liquor Control Com.*, 67 Ill.App.2d 107, 113, 213 N.E.2d 595, 598 (1966); *accord, Evans v. License Appeal Com.*, 95 Ill.App.2d 121, 237 N.E.2d 817 (1968).)

Therefore, since there was no evidence that the licensee or its agents had knowledge or permitted the alleged deviate conduct of the patrons a revocation order premised on this charge cannot be sustained.

The second charge is that the licensee's agents, Menard and Towell, engaged in deviate sexual acts on the licensed premises. While the court is cognizant of the fact that every act or omission of an agent or employee of a licensee shall be deemed and held to be the act of the licensee (Ill. Rev. Stat. 1971, ch. 43, par. 185), we are of the opinion that there was no substantial evidence to support this charge. Detective Sullivan testified as to a position undertaken by Menard and Towell but there was no testimony that the position was assumed to perform an act of sexual gratification as required by our Criminal Code, *supra*. Menard to the contrary gave an explanation that was consistent with the conditions of the working area in the lounge and with the duties of the bartenders. The record is also quite clear that the view of Detective Sullivan was necessarily obstructed by the height of the bar and the patrons

seated and standing in front of him. A revocation order based on the second charge is against the manifest weight of the evidence and an opposite conclusion is clearly evident.

■■ The third charge was that the licensee by and through his agents dispensed alcoholic beverages to a person under the age of 21. There is no substantial evidence to support this charge. Ivan Huffmaster, the alleged minor, did not testify and there was no evidence as to what his age was. In addition, Detective Sullivan testified that he did not see Huffmaster drinking from the particular glass which he confiscated and sent to the crime laboratory. Although the crime laboratory report was introduced into evidence, it is not contained in the record. There was no evidence that Huffmaster was underage or that what he was drinking was an alcoholic beverage. The record is devoid of any evidence to support the third charge. Therefore, a revocation order based on the third charge is also against the manifest weight of the evidence.

■■ The trial court did not err in reversing the order of the License Appeal Commission which affirmed the local liquor control commissioner's revocation of the plaintiff's liquor license. Since we are of the opinion that the trial court's decision must be affirmed, it is unnecessary to discuss the second issue raised by the defendant.

For the reasons herein stated, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER and JOHNSON, JJ., concur.