THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* Y. C. BATES, Defendant-Appellant.

(No. 73-324;

Third District—March 14, 1975.

Stephen Hurley and James Geis, both of the State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (·F. Stewart Merdian, of Statewide Appellate Assistance Service, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Rock Island County finding defendant guilty of armed robbery. He was sentenced to a term of from 4 to 12 years in the penitentiary.

On appeal in this court, defendant contends (1) that the prosecution

did not prove defendant guilty beyond a reasonable doubt through identification, and (2) that certain remarks made in the presence of the jury by the prosecutor during closing argument created such prejudice as to require reversal.

From the record it appears that on February 2, 1973, at 2:30 A.M., Robert Hughes, an employee of a service station in East Moline, Illinois, was robbed. Hughes was the only person present besides the holdup man. After Hughes had viewed from 25 to 50 police photographs, he identified defendant as the robber. Of photographs shown to Hughes, three were of the defendant, and two of them showed defendant with a goatee. Hughes selected the defendant twice but did not select the third photograph. After Hughes had made the photographic identification, the assisting police officer commented that Hughes should be familiar with Bates since he had robbed Hughes 2 years earlier. A few days later, Hughes identified defendant at a lineup and stated, "That's him except for the beard." Before he attended the lineup, where he identified defendant, Hughes had been informed that the person he had previously identified would be present in the lineup.

A pretrial defense motion to suppress the identification was denied by a circuit court judge following a hearing. The case was thereafter tried before another judge in a jury trial. The only evidence which incriminated defendant specifically was the testimony of Hughes, who made an in-court identification of defendant as the robber. He stated that defendant confronted him in the back room of the service station and that they first proceeded to the cash drawer, and that thereafter Hughes was placed in a broom closet nearby before the robber emptied the cash drawer. No fingerprints were found either on the closet door or cash drawer. The room in which Hughes was located when he was first accosted was lighted by only one bulb. Hughes, however, stated that he had ample opportunity, due to close proximity of Bates, to observe him. He said the offender was "nearly my size," which was just under 6 feet and 190 lbs. in weight, with a mustache and beard. Defendant was 5' 10", weighed 180 lbs. and wearing a mustache when arrested. Witnesses said he was clean-shaven at the time of the robbery. Hughes further testified that he had carefully looked at the pistol which defendant carried in his right hand, but he did not note any scars or marks on the defendant. Defendant's left hand had a blue tattoo on the back of it. Hughes stated he told the police about the beard but no notation was made of it by the officer.

As a further defense, defendant asserted an alibi. An Officer DeFauw stated that his notes, taken in conversation with defendant, indicated that defendant claims he spent the night of February 1 and until the

late morning of February 2 with Donna Payton, who was a friend of the wife of defendant. Donna Payton only partially corroborated the asserted alibi, but claimed she was asleep both before, during and after the time the robbery was committed, and, therefore, could not swear to defendant's whereabouts at that time.

■■ On the issue of identification, defendant claims that he was not proven guilty beyond a reasonable doubt since he was not properly identified as the perpetrator of the robbery. It is true that the burden is on the prosecution to prove beyond a reasonable doubt, not only the commission of the crime, but also that the defendant was in fact the perpetrator of the crime (*People v. McGee*, 21 Ill.2d 440, 173 N.E.2d 434 (1961)). Identification, however, by a single witness, if clear and credible, is sufficient to convict even if contradicted by the accused. *People v. Donald,* 29 Ill.2d 283, 194 N.E.2d 227 (1963).

■■ In the case before us, the evidence of witness Hughes could have been considered clear and convincing by the jury. While he was not accurate in estimating the size and weight of defendant and did not notice a tattoo on the left hand of defendant, he did clearly identify the photographs of defendant and also identified defendant personally. The failure to notice a blue tattoo on a dark-skinned left hand that was revealed to the jurors only after defendant in a well-lit courtroom pulled back his left-hand sleeve, was not unreasonable. The estimated variation in physical size also does not seem too significant in view of the fact that Hughes made three pretrial identifications from the photographs, the lineup and the in-court identification. The alibi which was presented did not account for defendant's activities at the time of the robbery, since Donna Payton admittedly was asleep for a sufficient time before and after the time the robbery was committed, so that she could not establish that defendant was with her during the time of the commission of the robbery. On the issue of identification, therefore, and of the alibi, there was clearly a question for the jury and the resolution by the jury of the issue of identification would not be disturbed.

There is more substance, however, to the second issue which is raised by defendant to the effect that the argument of the prosecutor was of such character as to constitute reversible error. The defense attorney had suggested in his closing argument that witness Hughes had been mistaken in his identification and had been influenced by the procedures employed by the police. The prosecutor then arose, and, in the presence of the jury, made the following statement: "Judge Stengel has ruled that it was a fair line-up and suppressed and denied the Motion to Suppress." There was an immediate objection by defense counsel. The jury thus heard a statement which, in effect, advised that another

judge had already ruled that the lineup was fair and had denied a motion to suppress the identification testimony.

As noted in *People v. Smith*, 6 Ill.App.3d 259, 285 N.E.2d 460 (1972), in determining whether a prosecuting attorney's argument to a jury is prejudicial, reference should be made to the context of the language, its relation to the evidence and the effect of the argument on the rights of the accused to a fair and impartial trial. Here the prosecutor told the jury that a judge other than the trial judge had already passed on the issue of identification or at least some phase of it.

In *People v. Finn*, 17 Ill.2d 614, 162 N.E.2d 354 (1959), the defense claimed that the accused could neither cooperate with counsel nor understand the charges against him. To refute this, the prosecution called a court reporter as a witness and had her read to the jury her notes "taken upon the occasion of defendant's appearance before another judge, approximately six weeks before, for the arraignment of the case for trial." These notes were, in the words of the court, "replete with expressions of the assignment judge which register indignation and disbelief of defendant's claim of insanity" (17 Ill.2d 614, 615). The court reversed and remanded that conviction and stated that the remarks of the assignment judge which were accentuated in the eyes of the jurors, because they were the words of the judge, related directly to the ultimate issue of fact which was then before the jury, that is, whether or not defendant was sane. In that case, the court also said that however strong the evidence against an accused may be and even though defendant was caught in the house he was burglarizing with some of the stolen property in his pockets, a fair trial in all stages is a fundamental requirement in a criminal prosecution, and when that requirement is not met it amounts to a denial of due process of law.

The damage which was done by the prosecutor's remarks in the case before us was so obvious that the trial judge felt it necessary to caution the jury in writing to disregard the statement. No amount of admonishment, we believe, could remove from the jurors knowledge of the fact that another judge had already ruled adversely to the defendant on the most significant issue which they were charged to resolve, relating to identification of defendant. It appears that the prosecutor thereafter again repeated in his closing remarks, "Now, do you think that if that line-up was conducted unfairly, that this Judge would have allowed this picture into evidence? Do you think that?" The defense objected to the remark for a second time, and the court sustained the objection but did not again admonish the jury to disregard the statement.

■■ While certain other remarks were also objected to by defendant, we need not discuss these in view of our ruling in this case. We believe

that the statement telling the jury that the previous judge had already ruled that certain evidence was proper was of such character as to make a mistrial the only solution which would have been appropriate on the trial level. We accordingly reverse and remand this cause to the Circuit Court of Rock Island County for retrial.

Reversed and remanded.

STOUDER and BARRY, JJ., concur.