THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES JACKSON, Defendant-Appellant.

First District (3rd Division)   No. 85—2874

Opinion filed October 28, 1987.—Rehearing denied February 1, 1988.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Sharon L. Gaull, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant James Jackson was charged by information with indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(3)), aggravated indecent liberties with a child based on sexual intercourse (Ill. Rev. Stat. 1983, ch. 38, par. 11—4.1(b)(1)(A)), two counts of aggravated indecent liberties with a child based on deviate sexual conduct (Ill. Rev. Stat. 1983, ch. 38, pars. 11—4.1(b)(1)(B), (C)), aggravated incest based on sexual intercourse (Ill. Rev. Stat. 1983, ch. 38, par. 11—10(a)(1)), and two counts of aggravated incest based on deviate sexual conduct (Ill. Rev. Stat. 1983, ch. 38, par. 11—10(a)(2)). Af-

ter a jury trial, defendant was convicted of aggravated indecent liberties with a child based on sexual intercourse, aggravated indecent liberties with a child based on deviate sexual conduct, aggravated incest based on sexual intercourse, and aggravated incest based on deviate sexual conduct. The jury acquitted him of indecent liberties with a child. The trial court sentenced defendant to 24 years' imprisonment in the Illinois Department of Corrections.

Defendant appeals and raises the following contentions: (1) the State failed to prove the *corpus delicti* of aggravated indecent liberties and aggravated incest based on sexual intercourse; (2) the State failed to prove aggravated indecent liberties and aggravated incest based on deviate sexual conduct since it failed to prove "an act of sexual gratification"; (3) the prosecutor's comment during closing argument that the complaining witness had been found competent to testify denied defendant his right to a fair evaluation of the witness' credibility; (4) the State improperly questioned witnesses at trial regarding details of the complainant's reports of the alleged offenses; (5) defendant was denied his right to choose to be sentenced for the offenses based on sexual intercourse according to the law in effect at the time of sentencing; and (6) defendant's sentence exceeds the maximum permissible under the law for the Class 2 felony of aggravated incest.

For the reasons stated below, we affirm the judgment of the circuit court.

Before trial, a hearing was conducted upon defendant's motion to determine whether the seven-year-old complainant was competent to testify at trial. After a hearing, the court initially found that she was not competent to testify at trial. Upon the State's request for a rehearing on the matter, complainant again was questioned, and the court found that she was competent to testify at trial.

At trial, complainant testified that she recalled going to the hospital during the prior December, before Christmas, for the reason that "James did something to" her. In open court she identified defendant as the "James" she was speaking of. She stated that during the prior summer defendant was married to her mother and lived in the same house with them. At the time of the alleged incident, it was hot outside and complainant was wearing pants and a short-sleeved blouse. She was playing hide-and-seek with her friends down the street from her house. She said that her mother also was there. Complainant then went home to use the washroom. While she was using the washroom, "James bust into the washroom" and licked her while her pants and underpants were pulled down around her knees. Complainant used a

female doll to indicate that James had licked her in her vaginal area.

Complainant stated that defendant then "dragged [her] into the kitchen" by pulling her arm. Defendant pulled down his own pants and underpants and then those of complainant. Defendant then laid complainant on the kitchen floor and laid on top of her. Complainant stated that defendant then "got back up on me because he told me he was going to whip me." Complainant stated that when defendant laid on top of her, he "punched" her. Complainant was asked to demonstrate the act using male and female dolls. The record indicates that complainant made an "up and down motion with the male doll." Defendant then got up and told complainant to go back outside. Complainant went outside and returned to the area where her mother and friends were. When asked if she told her mother what happened, complainant stated that she did not, since she was scared at the time.

While staying at her grandmother's house some time later, complainant told her grandmother of the incident. Complainant testified that at the time she told her grandmother, it was still hot outside. Later she admitted that she did not know when she told her grandmother. Complainant stated that after she told her grandmother, her mother came over to the grandmother's house. Complainant then told her mother what happened and her mother called the police.

Complainant's mother and a policeman then took complainant to the hospital. Complainant stated that she told the policeman what happened. She recalled seeing a doctor at the hospital and speaking with him. Her mother told the doctor what happened to her. Complainant testified that she stayed in the hospital overnight, and that she was able to return home before Christmas. On cross-examination, complainant stated that the doctor had removed toilet paper from her vagina. Complainant denied putting the paper there.

Complainant's grandmother, Rosalie, testified that complainant came to visit her at her home on West Ohio Street in mid-December 1984, when the Chicago public school teachers were on strike. Rosalie stated that complainant stayed with her from Wednesday to Sunday. Some time prior to Sunday, complainant complained to her grandmother that she had bumps on her vaginal area. Rosalie examined complainant and noticed an odor. She testified that she was surprised that a seven-year-old child would have such an odor. Rosalie asked complainant what was wrong, and complainant told her grandmother that "James took her out [of] the bathroom and put her in the kitchen and he had her, put her [sic] thing in here." Rosalie stated that complainant had never told her anything like that before.

On Sunday morning, after Rosalie's daughter, Annette, returned

home, Rosalie told her what had happened. Annette then went to get complainant's mother, Deloris. Rosalie stated that, although Deloris lived nearby, she did not call Deloris before Sunday since she did not have a telephone, and she was unable to walk to Deloris' house since she had been ill. Further, Annette, who lived with Rosalie, had been away from home until some time on Saturday. When Deloris arrived at Rosalie's house, she talked with complainant, examined her, and then called police. The police arrived, spoke with Deloris and complainant, and then took Deloris and the child to the hospital.

Complainant's mother, Deloris, testified that she married defendant in March 1983, and that defendant was living with her and her children, including complainant, on North Avers Street in June 1984. Deloris stated that around December 12, 1984, complainant visited her natural father for a couple of days before going to her grandmother's house for about four days. Complainant remained at her grandmother's house until Sunday, when her aunt [Annette] arrived at Deloris' apartment, spoke with her, and accompanied Deloris back to the grandmother's home. Before leaving with Annette, Deloris told defendant, who remained at the apartment, that "if he had done anything to my baby he was taking his ass to jail."

When she arrived at the grandmother's home, Deloris took complainant into the washroom and asked her what was wrong and what James had done to her. Complainant responded that he had pushed on her in the bathroom, licked her, and then dragged her into the kitchen. The State asked Deloris if complainant had told Deloris where defendant licked complainant. Complainant had said only that she was sitting on the toilet and defendant licked her. Complainant then told Deloris that defendant dragged her into the kitchen and laid her on the floor and stuck his thing in her. The State asked Deloris if she asked complainant what she meant. Deloris said "no." The prosecutor asked if complainant had ever before used the word "thing" when referring to a man. Deloris responded negatively. Deloris stated that she asked complainant again what happened and that she repeated the same account. Deloris then called the police. Meanwhile, defendant arrived at the grandmother's house and said, "[H]ere we go with this shit again." Two police cars arrived, and the police officers asked defendant to come out of the house. Other officers took Deloris and complainant to Cook County Hospital, where doctors examined complainant in the presence of Deloris.

Chicago police officer James Peck testified that he responded to a radio assignment to meet a sexual assault victim on Ohio Street at about 10:30 a.m. on December 16, 1984. When he arrived at the loca-

tion, he saw police officer Mazzera and defendant walking toward a squad car parked in front of the house. Peck spoke to Mazzera, and the two officers then handcuffed defendant and placed him in the first squad car. Mazzera took defendant to the 11th district police station. Peck approached and spoke with Deloris, who was on the porch. Peck then took Deloris and complainant to Cook County Hospital.

While at the hospital, in the presence of the doctor and Deloris, Peck asked complainant what had happened. Complainant stated that while she was in the bathroom James came into the bathroom and licked her in the area of her vagina, then took her into the kitchen, laid her on the floor, and "put his thing inside me, and pumped me." At trial, the prosecutor asked Peck if those were complainant's words, that he "put his thing inside me and pumped." Peck answered affirmatively. Peck stated that, after speaking with complainant and her mother, he notified detectives, who later arrived at the hospital.

Assistant State's Attorney Diane Gordon testified that she met complainant, her mother, and her natural father at Cook County Hospital on December 17, 1984, after she responded to a call and read the police reports regarding an investigation of an alleged sexual assault. Gordon was unable to interview complainant at that time, since there was a Christmas party going on and a Santa Claus visiting the children in the hospital.

Gordon then went to Area 4 Violent Crimes and interviewed defendant. Also present during the interview was Detective Keen, who had been present at the hospital when Gordon met complainant. Gordon stated that after she advised defendant of his *Miranda* rights, defendant related to her an account of the incident. When asked, defendant gave Gordon permission to write down his account of the incident. Gordon wrote a summary of what defendant related to her. Defendant signed the statement and Gordon signed it as a witness. At trial defendant's statement was read to the jury and admitted into evidence. The statement referenced "the sexual assault of *** [complainant], which occurred on [sic] June, 1984, at 326 North Avers, at approximately 2:30." The statement indicated, among other things, that, on the date of the incident, complainant came into the house to use the washroom, and afterwards, defendant "had sex" with complainant in the kitchen, "sex grinding against her."

Dr. Jerry Mitchell testified that he performed a gynecological examination of complainant at Cook County Hospital on December 17, 1984. He found that the external genitalia appeared to be of a normal young female. The external urethra had a superficial ulceration above it. Mitchell noted that the report of the emergency room physician,

Dr. Sharman, had described the same finding as an abrasion of 1.5 centimeters on the right labia majora. The vagina had no lesions of mucosa. There was a white discharge, which was normal for a seven-year-old. Mitchell found no lesions in the rectum. The hymen was absent, which was unusual for a seven-year-old child. On cross-examination, Mitchell stated that the absence of a hymen can be caused by several factors, and that some females never have a hymen. Mitchell stated that the absence of a hymen in a young or adult female does not in and of itself indicate that the person is or is not a virgin. On redirect, Mitchell stated that the absence of a hymen may indicate sexual activity.

Mitchell further testified that the introitus, or opening of the vagina, was three centimeters in diameter, or slightly larger than two of his fingers. The opening was large enough to accommodate an average male organ to penetrate the child's vagina, and was larger than normal for a seven-year-old child. Mitchell stated that in a virginal adult female the vagina itself is often only the size of one finger. Mitchell testified that, given the size of the vaginal opening, complainant could have gone back out to play without any difficulty even after an act of penetration by a male organ. Further, due to the size of the opening, penetration by a male sex organ would not necessarily result in scarring, lacerations, or lesions in the area. Mitchell was aware that the day prior to his examination, Dr. Sharman had removed a piece of toilet paper with hair attached to it from complainant's vagina. Mitchell stated that the presence of the toilet paper could have caused discomfort, and, if there was an infection involved, could be responsible for the superficial ulceration above the urethra.

## I

■ On appeal defendant initially asserts that the State failed to prove the *corpus delicti* of aggravated indecent liberties with a child based on sexual intercourse and aggravated incest based on sexual intercourse. Defendant contends that the State failed to prove the element of sexual intercourse, as it failed to prove penetration by defendant of complainant's vagina. (*People v. Watts* (1974), 19 Ill. App. 3d 733, 312 N.E.2d 672; *People v. Polk* (1973), 10 Ill. App. 3d 408, 294 N.E.2d 113, 117.) Defendant notes that penetration requires insertion of the male part into the female part. (*In re Williams* (1974), 24 Ill. App. 3d 593, 598, 321 N.E.2d 281, 284.) Defendant contends that his written statement indicating that he "had sex" with complainant is insufficient. He asserts that the prosecution must

prove the *corpus delicti* with evidence apart from a defendant's statements. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378-81; *People v. Willingham* (1982), 89 Ill. 2d 352, 358-61.) Further, defendant contends that complainant's testimony that defendant "punched" her was insufficient. Nor, defendant asserts, did the State demonstrate that the "up and down motion" of the male doll indicated penetration.

Additionally, defendant asserts that the medical testimony at trial failed to prove the *corpus delicti*. Defendant points to the medical findings of normal external genitalia, no lesions of mucosa in the vagina, a superficial laceration over the urethra explainable as a result of toilet paper found in the vagina, and the absence of a hymen, which is not necessarily indicative of intercourse. Defendant asserts that the medical evidence failed to show, "as a replacement for complainant's testimony," that sexual intercourse occurred.

The State responds that defendant was properly convicted, and that complainant's testimony met the burden of clear and convincing evidence which proved that the defendant had sex with her. Further, the State asserts, her testimony was corroborated at trial by defendant's written statement. The State points to complainant's testimony that defendant took down his pants, laid on top of her, and "punched" her. Complainant explained the word "punched" by using male and female dolls to demonstrate defendant on top of her making an up and down motion. Defendant threatened to "whip her" if she told anyone, and then sent complainant back out to play. The State asserts that defendant's written confession corroborates complainant's testimony that she came into the house to use the washroom and that after she used the washroom defendant took her into the kitchen where he "had sex" with her and "grind[ed] against her" on the kitchen floor. Defendant's statement also confirmed what complainant was wearing at the time.

Additionally, the State points to the medical evidence that complainant had a reddened sore above her urethra, that her hymen was missing, and that she had a vaginal opening of three centimeters, twice the size of an adult virginal female. Further, the medical testimony indicated that complainant's vagina could easily have accommodated an average male penis and that she could have been penetrated and easily have gotten up and gone back outside to play immediately afterwards.

The State does not dispute that a defendant's confession alone is insufficient to prove the *corpus delicti*. (*People v. Lambert* (1984), 104 Ill. 2d 375.) However, the State asserts, if independent evidence tends to prove that an offense occurred, then such evidence, if corroborative

of the facts contained in the confession, may be considered along with the confession in establishing the *corpus delicti*. (*People v. Willingham* (1982), 89 Ill. 2d 352, 361.) The State contends that the *corpus delicti* in the instant case was proved beyond a reasonable doubt. (*People v. Lambert* (1984), 104 Ill. 2d 375, 379.) The State contends that defendant's confession coupled with the testimony at trial of complainant constituted evidence sufficient to sustain defendant's conviction. (*People v. McNichols* (1986), 139 Ill. App. 3d 947, 487 N.E.2d 1252.) Finally, the State distinguishes *People v. Lambert* (1984), 104 Ill. 2d 375, in which the victim failed to testify at trial or issue a statement, and no medical evidence or evidence of a complaint by the victim to his mother or anyone else was present.

In reply, defendant distinguishes *People v. McNichols* (1986), 139 Ill. App. 3d 947, 487 N.E.2d 1252. Defendant asserts that, unlike *McNichols*, complainant's testimony in the instant case failed to show sexual intercourse, and there was no corroborating eyewitness to the alleged incident.

We find that the State met its burden of proving the *corpus delicti*. Defendant erroneously asserts that the *corpus delicti* must be established by evidence "apart from a defendant's statements." In the instant case, since evidence corroborating defendant's statement was presented, that evidence was properly considered along with defendant's confession to prove the *corpus delicti*. *People v. Willingham* (1982), 89 Ill. 2d 352, 359-60.

▮ Illinois courts have held that where a conviction for taking indecent liberties with a child depends upon the testimony of the prosecuting witness, and the defendant denies the charge at trial, there must be substantial corroboration of the prosecuting witness by some other evidence, fact, or circumstance in the case. (*People v. Pazell* (1948), 399 Ill. 462, 78 N.E.2d 212; *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137.) Evidence which may be adduced to raise the corroboration to the clear and convincing standard includes the account of an eyewitness (*People v. Sharp* (1943), 384 Ill. 503, 51 N.E.2d 554) and admissions or confessions of the defendant (*People v. Crowe* (1945), 390 Ill. 294, 61 N.E.2d 348). Each may be a source of substantial corroboration. (*People v. Pazell* (1948), 399 Ill. 462, 78 N.E.2d 212; *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137.) The court must look to whether the evidence taken as a whole substantially corroborates the victim's story. 127 Ill. App. 3d 1056, 469 N.E.2d 1137.

▮ In the instant case, although there is no eyewitness testimony, defendant's confession, given to the assistant State's Attorney shortly

after the incident occurred, substantially corroborated complainant's testimony. Defendant admitted having sex with the child. Complainant clearly described defendant's acts of taking her into the kitchen and having sex with her. She demonstrated the act of intercourse through use of the dolls, and the jury was able to view complainant as she testified and demonstrated to the court what had occurred. Although complainant failed to describe in words the act of penetration, the record sufficiently supports the jury's finding that defendant had sexual intercourse with complainant.

Additionally, we note that the details of complainant's testimony, such as the sequence of events and what she was wearing on the day of the occurrence, are substantially corroborated by defendant's written statement. Further, the medical evidence, while inconclusive as to whether sexual penetration occurred, is consistent with a finding of intercourse.

## II

■ Second, defendant contends that the State failed to prove aggravated indecent liberties with a child based on deviate sexual conduct and aggravated incest based on deviate sexual conduct, as it failed to prove "an act of sexual gratification," an element of the offenses. Defendant contends that although complainant testified that defendant licked her in the vaginal area, the State failed to prove that the alleged act was one of "sexual gratification." Defendant asserts that the legislature determined that not every contact involving one person's sex organs and another person's mouth was deviate sexual conduct (*People v. Allegri* (1985), 109 Ill. 2d 309, 313), and that this court must accord meaning to the words of the statute (*People v. Seidel* (1985), 138 Ill. App. 3d 616, 620, 485 N.E.2d 1330; *Davis v. Attic Club* (1977), 56 Ill. App. 3d 58, 62, 371 N.E.2d 903; *People v. Meints* (1976), 41 Ill. App. 3d 215, 219, 355 N.E.2d 125). Defendant cites *Easy Life Club, Inc. v. License Appeal Comm'n* (1974), 18 Ill. App. 3d 879, 883, 310 N.E.2d 705, 708, for the proposition that the State failed to bring sufficient evidence to prove the element. As the evidence fails to establish defendant's guilt beyond a reasonable doubt (*People v. Stamm* (1979), 68 Ill. App. 3d 177, 180, 385 N.E.2d 839, 842), defendant asserts, the convictions must be reversed (*People v. Nunes* (1964), 30 Ill. 2d 143, 146).

The State responds that defendant's reliance on *Easy Life Club, Inc. v. License Appeal Comm'n* (1974), 18 Ill. App. 3d 879, 310 N.E.2d 705, is misplaced. In *Easy Life*, the court stated that there

was no testimony to show that the alleged acts were done for sexual gratification. Rather, the evidence included an explanation that the persons charged with the offense were working in crowded conditions and frequently brushed against each other in passing. 18 Ill. App. 3d 879, 881, 310 N.E.2d 705, 708.

The State asserts that the legislative intent regarding the statute was to distinguish, for instance, a mother touching her child's vagina while changing a diaper, from a man inserting his penis into his daughter's vagina. Acts such as the latter example imply an intention to obtain sexual gratification. Defendant's intentions may be inferred from his actions and the surrounding circumstances. (*People v. Wilcox* (1975), 33 Ill. App. 3d 432, 337 N.E.2d 211.) The State contends that no other inference can be drawn from defendant's conduct except that he was attempting to obtain sexual gratification. Finally, the State asserts that a court of review should not set aside a finding of guilt unless the evidence is so palpably contrary or so unreasonable, improbable, or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. *People v. Reese* (1973), 54 Ill. 2d 51, 59.

In reply, defendant distinguishes *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 337 N.E.2d 211, in which the defendant engaged in a series of deviate sexual acts. Defendant contends that the actions alleged in the instant case do not match such a pattern of behavior. Defendant asserts that the State can point to no circumstance surrounding the incident by which to infer the required sexual gratification and that conclusion does not arise merely from the brief deviate sexual conduct itself.

We agree with the State and find that the evidence supports a reasonable inference that defendant performed the acts on complainant for "sexual gratification." (*People v. Wilcox* (1975), 33 Ill. App. 3d 432, 337 N.E.2d 211.) The State has met its burden under the statute. *People v. Garrison* (1980), 82 Ill. 2d 444, *appeal dismissed* (1981), 450 U.S. 961, 67 L. Ed. 2d 610, 101 S. Ct. 1475; *People v. Stolfo* (1977), 46 Ill. App. 3d 616, 361 N.E.2d 101.

### III

■ Third, defendant asserts that the following comments of the prosecutor during closing argument, indicating that complainant had been found able to testify truthfully, denied defendant his right to a fair evaluation of complainant's credibility:

"MS. CAGNEY [Prosecutor]:

\* \* \*

> She [complainant] had to qualify to testify. She had to demonstrate to the Court that she understood the difference between telling the truth—
>
> MR. MARTIN [Defense counsel]: Object.
>
> MS. CAGNEY: Between telling the truth and telling a lie.
>
> THE COURT: Overrule."

The jury was required to consider the witness' understanding of the nature and obligation of the oath in determining her credibility. (*Whitford v. Downs* (1963), 44 Ill. App. 2d 151, 153, 194 N.E.2d 553, 555.) In making such an evaluation, defendant asserts, the jury should not have been assisted by the prosecutor's erroneous argument. Defendant asserts that arguments concerning evidentiary rulings made by the trial court outside the presence of the jury contravene the standards of fair argument. (*People v. Edwards* (1977), 49 Ill. App. 3d 79, 83-84, 363 N.E.2d 935, 938, *rev'd on other grounds* (1978), 74 Ill. 2d 1, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.) Therefore, defendant asserts, the prosecutor's reference to the judge's ruling on complainant's competency was error (*People v. Monroe* (1981), 95 Ill. App. 3d 807, 420 N.E.2d 544; *People v. Carter* (1979), 73 Ill. App. 3d 406, 392 N.E.2d 188; *People v. Bates* (1975), 26 Ill. App. 3d 306, 325 N.E.2d 123), particularly in view of the fact that the crucial issue for the jury was the credibility of complainant, since defendant failed to admit deviate sexual conduct and the *corpus delicti* of the offenses based on sexual intercourse was not shown.

The State responds that the prosecutor's comments did not deprive defendant of a fair trial. The State notes that during opening argument to the jury, defense counsel stated that complainant was "a little girl who [could] not tell the difference between the truth and a lie." The court sustained the State's objection to the statement. However, defense counsel went on to say, "I believe that when you listen to her testimony, both in direct and on cross-examination, that you will conclude that this little girl cannot tell fact from fantasy." During closing argument, defense counsel asserted that "[a]ll children lie just like all adults lie," in addition to other similar comments. The words of the prosecutor to which defendant objects came in rebuttal argument. After the court overruled defendant's objection to the comment at issue, the prosecutor further stated, "[Y]ou heard me ask [complainant] a number of questions to demonstrate that she did understand what the difference was between the truth and a lie. *** She demonstrated to you that she understands the difference."

The State asserts that a prosecutor is allowed wide latitude in

closing arguments (*People v. Davis* (1982), 104 Ill. App. 3d 512, 516, 432 N.E.2d 1134, 1137), and may comment on the evidence, draw all legitimate inferences therefrom and comment on the credibility of the accused (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322, 379 N.E.2d 847, 853). Further, comments by the prosecutor which might ordinarily be considered prejudicial and constitute reversible error are proper in rebuttal argument when they are invited replies to comments made by defendant in his closing argument. (*People v. Perez* (1983), 113 Ill. App. 3d 143, 149, 446 N.E.2d 1229, 1234.) When a defendant implies that the testimony of certain witnesses is untrue, he cannot complain on appeal that the prosecutor's response to that argument prejudiced him. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 323, 379 N.E.2d 847, 853.) By implying that complainant was lying and stating that she could not tell the difference between fact and fantasy, the State asserts, defense counsel invited comments to the contrary from the prosecution.

Additionally, the State contends that prosecutorial comments do not amount to reversible error unless some or all of them result in substantial prejudice to the accused or the verdict would have been different had the comments not been made. (*People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051, *cert. denied* (1982), 455 U.S. 954, 71 L. Ed. 2d 671, 102 S. Ct. 1462.) Further, reversible error does not result if the comments are harmless in light of the overwhelming evidence of the defendant's guilt. (*People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634.) Additionally, the State asserts that since the trial court adequately instructed the jury to disregard statements not based on evidence, the statements may be considered harmless. (*People v. Baptist* (1979), 76 Ill. 2d 19.) The trial court instructed the jury to consider only the evidence presented, and that closing arguments are not evidence, so that any statements made in argument not based on the evidence should be disregarded. Such instructions have been held to cure any possible prejudice from a prosecutor's improper remarks in closing argument. *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339.

Defendant replies that the State failed to show harmlessness. Defendant notes that there were no other eyewitnesses, and asserts that the physical evidence was "inconclusive" and the details of complainant's reports to her grandmother, mother, and the police were improperly admitted. *People v. Emerson* (1983), 97 Ill. 2d 487, 502.

Additionally, defendant maintains that the State failed to prove a curative effect as a result of jury instructions, particularly in light of the fact that the court overruled defendant's objection to the prosecu-

tion's comment regarding complainant's having qualified to testify. Thus, defendant asserts, the trial judge approved the propriety of the argument, judicially validated the jury's consideration of the information (*People v. Stack* (1984), 128 Ill. App. 3d 611, 618, 470 N.E.2d 1252, *aff'd* (1986), 112 Ill. 2d 301, *cert. denied* (1986), 479 U.S. 870, 93 L. Ed. 2d 162, 107 S. Ct. 236), and thereby exacerbated the argument's prejudicial effect (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 522, 475 N.E.2d 945). Further, defendant maintains that admonitions to the jury are not always sufficient to cure errors (*People v. Eddington* (1984), 129 Ill. App. 3d 745, 777, 473 N.E.2d 103, 125), and, where the court cannot say that the remarks did not contribute to the conviction, reversal is required (*People v. Bolden* (1978), 59 Ill. App. 3d 441, 375 N.E.2d 898).

Finally, defendant asserts that defense counsel's opening remarks failed to invite the prosecutor's references to the pretrial finding of complainant's competency. The theory of invited response does not insulate all related remarks by the prosecutor. (*People v. Patterson* (1976), 44 Ill. App. 3d 894, 898, 358 N.E.2d 1164, 1167-68.) Comments which go beyond responding to the matters raised by defense counsel are improper. *People v. Burke* (1985), 136 Ill. App. 3d 593, 604-05, 483 N.E.2d 674, 683.

We hold that the prosecutor's comments constituted error as an improper reference to a pretrial evidentiary ruling made by the trial court. (*People v. Edwards* (1977), 49 Ill. App. 3d 79, 363 N.E.2d 935, *rev'd on other grounds* (1978), 74 Ill. 2d 1, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.) We also find, however, that the error committed was harmless. (*People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051, *cert. denied* (1982), 455 U.S. 954, 71 L. Ed. 2d 671, 102 S. Ct. 1462.) Although the trial court failed to sustain defense counsel's objection to the prosecutor's comment, the judge did admonish the jury to disregard any statements not based on the evidence. Further, the comment constituted only one isolated reference to the court's finding of competency of complainant. After defense counsel objected to the comment, the prosecutor reminded the jury that complainant had testified *at trial* regarding her knowledge of the difference between the truth and a lie, and that the jury had the opportunity to judge for themselves the credibility of complainant. We cannot find that the jury was seriously misled by the prosecutor's remarks. Nor do we find that substantial prejudice resulted or that the verdict would have been different had the comment not been made, in view of the overwhelming evidence of defendant's guilt. *People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051, *cert. de-*

*nied* (1982), 455 U.S. 954, 71 L. Ed. 2d 671, 102 S. Ct. 1462.

## IV

■ Fourth, defendant asserts that the State's improper introduction at trial of details of complainant's reports to her grandmother, mother, and the police regarding the alleged incident with defendant constituted plain error. Defendant asserts that although witnesses who receive a report of an offense by an alleged victim may provide the fact of the complaint, they may not testify to the details of the complaint or even the defendant's name. (*People v. Andino* (1981), 99 Ill. App. 3d 952, 425 N.E.2d 1333; *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064.) Further, defendant notes that although a recently enacted law (Ill. Rev. Stat. 1983, ch. 38, par. 115–10) permits introduction of out-of-court statements in all cases involving sex with young children, that statute does not authorize the detailed evidence presented by the State in the instant case.

Additionally, defendant asserts that the statute did not expand the prior law which forbad recitation of the details of the complaint. (*People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1068, 469 N.E.2d 1137, 1146.) Additionally, *People v. Salas* (1985), 138 Ill. App. 3d 48, 485 N.E.2d 596, held that details of such complaints were not admissible since section 115–10 of the statute allows admission into evidence of testimony only that the complaint was made and not testimony reiterating the details of the complaint. (138 Ill. App. 3d 48, 55, 485 N.E.2d 596, 600.) Further, the court in *People v. Andino* (1981), 99 Ill. App. 3d 952, 425 N.E.2d 1333, found plain error where details of the victim's later complaints were allowed and where no physical evidence or eyewitnesses corroborated the charges. (99 Ill. App. 3d 952, 954-55, 425 N.E.2d 1333, 1335.) Defendant asserts that as in *Andino* and *Salas*, the presentation of details of complainant's complaints, in light of the absence of eyewitness or medical corroboration, was prejudicial.

The State responds that defendant waived this issue on appeal since he failed to object at trial or specify his objection in his motion for a new trial. (*People v. Precup* (1978), 73 Ill. 2d 7.) The State asserts that the plain error rule (87 Ill. 2d R. 615(a)) is not a general saving clause for arguments not made in the court below. *People v. Precup* (1978), 73 Ill. 2d 7.

Assuming *arguendo* that this court reviews the issue, the State contends that section 115–10 allows the testimony of the person to whom the child complained that such complaint was made, in order to corroborate the child's testimony. (*In re C.K.M.* (1985), 135 Ill. App.

3d 145, 149, 481 N.E.2d 883, 887; *People v. Woith* (1984), 126 Ill. App. 3d 817, 467 N.E.2d 614.) The State asserts that the testimony of complainant's mother, grandmother, and the police merely repeated the child's words in complaining of the sexual assault and therefore was properly admitted.

The State distinguishes *Salas* and *Andino* from the instant case since in those cases no other corroborative evidence was presented, and the only evidence was the victim's testimony to rebut the defendant's denial that the crimes occurred. The State asserts that evidence was presented in the instant case to corroborate complainant's testimony, including defendant's written statement to the police. Defendant had an opportunity to deny the charges made against him, make any changes to the statement before signing it, or remain silent, and yet he chose to sign the confession. Additionally, the State asserts that the medical evidence corroborates complainant's testimony and is clear and convincing. *People v. Robinson* (1978), 73 Ill. 2d 192; *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064.

The State further cites *People v. Robinson* and *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137, for the proposition that the introduction of hearsay testimony concerning a corroborative complaint may be rendered harmless if all the facts involved in the complaint are later established by the complainant's testimony (*People v. Robinson* (1978), 73 Ill. 2d 192, 200; *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1068-69, 469 N.E.2d 1137, 1146), and where defense counsel is able to cross-examine the complainant (127 Ill. App. 3d 1056, 1069, 469 N.E.2d 1137, 1146). The State contends that since complainant testified and was subject to cross-examination, then even if allowing the testimony of the other witnesses was error, the error was rendered harmless.

Defendant replies that complainant's mother, grandmother, and Officer Peck did not merely repeat complainant's testimony. While complainant failed to testify to sexual intercourse, the other three witnesses did testify to such an act. Further, defendant asserts that even assuming that the disclosures match, the mere fact of repetition of complainant's account of the occurrence was prejudicial (*People v. Smith* (1985), 139 Ill. App. 3d 21, 32, 486 N.E.2d 1347, 1355; *People v. Rodriguez* (1982), 107 Ill. App. 3d 43, 49, 437 N.E.2d 441, 445-46), and the mere fact of complainant's exposure to cross-examination did not eliminate the repetition heard through four witnesses.

We hold that, as defendant failed to raise this issue in his post-trail motion, it is deemed waived. (*Wilson v. Clark* (1981), 84 Ill. 2d 186.) Therefore, any error was waived unless the evidence was so

highly prejudicial as to constitute plain error. (*People v. Pallardy* (1981), 93 Ill. App. 3d 725, 417 N.E.2d 851.) The doctrine of plain error (87 Ill. 2d R. 615(a)) is a limited exception to the waiver rule applied to correct grave errors (*People v. Tannenbaum* (1980), 82 Ill. 2d 177), or where the evidence is closely balanced and the trial error is so prejudicial that the accused has been denied a fair and impartial trial (*People v. Carlson* (1980), 79 Ill. 2d 564).

■ We note that the legislative history of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—10) indicates a legislative intent that testimony as to the fact of the complaint be admissible, but that testimony as to the details of the act complained of be inadmissible. (*People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1068, 469 N.E.2d 1137, 1146.) Thus, the statute appears to have followed earlier case law which forbad testimony as to details of a complaint. (*People v. Damen* (1963), 28 Ill. 2d 464; *People v. McKee* (1977), 52 Ill. App. 3d 689, 367 N.E.2d 1000.) Accordingly, we find that it was error to admit the testimony of the three witnesses regarding the details of complainant's reports to them. Nevertheless, we find that any resulting error was not so prejudicial as to deny defendant a fair trial. Nor was the evidence closely balanced, in view of complainant's detailed testimony, defendant's pretrial confession, which substantially corroborated complainant's testimony, and the medical evidence consistent with sexual intercourse. There was no plain error.

## V

■ Fifth, defendant contends that he was denied his right to choose to be sentenced for the crime of unlawful intercourse under the law in effect at the time of the sentencing hearing. Defendant was convicted in June 1984 and sentenced in September 1985. Defendant asserts that he had the right to be sentenced under section 12—13 of the Criminal Code of 1961 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—13), effective July 1, 1984, which statute redefined sex crimes.

Under certain authorizing statutes, a defendant is entitled to choose between the law at the time of the crime and the law at the time of sentencing. (*People v. Anderson* (1981), 93 Ill. App. 3d 646, 417 N.E.2d 663; Ill. Rev. Stat. 1983, ch. 1, par. 1103.) Defendant asserts that since his sentences were pronounced after the new law took effect, the new law would extend to his penalty. (*People v. Bradford* (1985), 106 Ill. 2d 492, 504.) Additionally, defendant contends that the

crime of unlawful sexual intercourse of which he has been accused "most closely matches" the offense of criminal sexual assault as defined in the new statute. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—13(a)(3).) Defendant notes that under the new statute, criminal sexual assault is a Class 1 felony (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—13(b)), and asserts that his punishment for the unlawful intercourse has been mitigated by the new law from a Class X to a Class 1 sentence.

The State responds that defendant failed to object at trial to being sentenced under the 1983 statute and therefore has waived the issue on appeal. (*People v. Precup* (1978), 73 Ill. 2d 7.) Assuming *arguendo* that the issue was not waived, the State asserts that defendant was properly sentenced according to the statutes in effect at the time of commission of the offenses. The State asserts that the new statute specifically states that it applies only to acts committed on or after July 1, 1984. (Pub. Act 83—1067 §27.) Since defendant committed the acts complained of in June 1984, the new statute fails to provide him any relief. The State notes the court's function in giving effect to legislative intent. (*People v. Bratcher* (1976), 63 Ill. 2d 534.) Further, the State asserts that unless there is an express statutory provision stating that an act is to have retroactive effect, it can only be applied prospectively. *People v. Davis* (1983), 97 Ill. 2d 1, 22-23.

Additionally, the State asserts that section 3 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1983, ch. 1, par. 1103), relied on by defendant, applies only to amendments which mitigate punishment for an offense and not to amendments which change the nature of the offense. (*People v. J.S.* (1984), 103 Ill. 2d 395; *People v. Fisher* (1985), 135 Ill. App. 3d 502, 481 N.E.2d 1233.) The State asserts that defendant's reliance on *People v. Bradford* (1985), 106 Ill. 2d 492, is misplaced, since the new statute created an entirely new crime different from the offenses of which defendant was convicted. The State contends that, in any event, the actions of defendant under the new statute would constitute aggravated criminal sexual assault, a Class X felony. Therefore, the State asserts, defendant's sentence would not have been reduced had he been sentenced under the new statute.

In reply, defendant distinguishes *People v. J.S.* (1984), 103 Ill. 2d 395, in that the *J.S.* case considered the substantive provisions of the new law and not the sentencing provisions. Defendant asserts that *People v. Bradford* (1985), 106 Ill. 2d 492, controls this issue.

We agree with the State and find that the trial court properly sentenced defendant. The saving clause of the new act provides that

the abolition of any offense by the new amendment will not affect the prosecution pending or punishment accrued under any law in effect prior to the amendment, which was effective July 1, 1984. Further, the saving clause specifically provides that the amendment shall only apply to persons who commit offenses on or after the effective date of the amendment, July 1, 1984. (Pub. Act 83—1067 §27.) As defendant's offense was committed in June 1984, the trial court properly looked to sentencing provisions applicable to the offenses as defined under the prior act.

## VI

■■■ Finally, defendant contends that the sentence of 24 years exceeds the maximum permissible under the law for the Class 2 felony of aggravated incest and defendant is entitled to resentencing. *People v. Churchill* (1980), 80 Ill. App. 3d 405, 399 N.E.2d 985.

The State responds that defendant's sentence of 24 years' imprisonment on each Class X felony is well within the statutory guidelines of 6 to 30 years (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(3)). The State contends that defendant was properly sentenced and, since the trial court properly considered aggravating and mitigating factors, there was no abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 155.

We agree with the State and find that defendant is not entitled to resentencing. Defendant attempts to assert on appeal that the trial court improperly looked to the sentencing provisions for Class X offenses in sentencing him for the Class 2 offenses of aggravated incest. We find that the record is clear that the trial court properly provided the 24-year sentence based on defendant's conviction for the Class X crime of aggravated indecent liberties. Defendant alludes to some confusion by the trial court. The fact that the trial court questioned counsel at the close of the sentencing hearing as to the specific Class X crimes for which defendant was convicted did not change or invalidate in any way the sentencing. The record indicates that at the sentencing hearing the trial court correctly reviewed the findings of the jury on each charge and properly sentenced defendant on his convictions. We find no error.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.